UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

JOSEPH CHRIS ZORN,         )
                           )
    Plaintiff              )
                           )
v.                         )
                           )   No. CV 609-081
PRINCIPAL LIFE INSURANCE   )
COMPANY,                   )
                           )
    Defendant.             )

## ORDER

This ERISA case[1] is hung up on discovery ropes. The dispute is traceable to the fact that judicial review of an ERISA case is typically limited to the administrative record that the parties generate before the case is filed. Hence, normal discovery is not contemplated. Defendant says this case is different. Plaintiff and his related business entities say it is not. The Court agrees with the defendant and thus denies the pending motions to quash and for a protective order. Docs. 21 & 25.

---

[1] Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§1001, *et seq.*

## I. BACKGROUND

Invoking 29 U.S.C. § 1132(a)(1)(B), Joseph Chris Zorn seeks judicial review of a disability benefits termination decision by his disability insurer, Principal Life Insurance Company (PLIC). Doc. 1 at 1 ¶ 2. PLIC initially paid Zorn disability but then learned that, in PLIC's opinion, he is not disabled, so it terminated his benefits. Doc. 19 at 2. It continues to deny that Zorn is disabled under the terms of his disability plan. *Id.* It also contends that his claim is barred for other reasons like laches and unclean hands. *Id.* And, PLIC insists, his claim is subject to offset for any benefits it paid to him when he was not disabled. *Id.*

The parties' discovery dispute stems from Zorn's claimed disability, starting in 1994, which he says prevented him from continuing his work as an insurance agent. *Id.* at 4. He received benefits on that claim until December 17, 2004, when PLIC learned that he had continued to perform disability-inconsistent activities in connection with his present or former businesses: Zorn & Son Insurance Agency, Inc.; Zorn-Land, Inc. (formerly A&C Rentals); and Payroll & Accident Control Services. *Id.* at 4-6; doc. 30 at 2.

Thus, a key issue in this case has been the extent to which Zorn has been and continues to engage in those and similar activities since 1994. Doc. 30 at 1-2. PLIC thus served a Fed. R. Civ. P. 45 subpoena on Zorn's accountant, Lovins Clark & Company, PC., seeking information about Zorn's activities with those companies. Doc. 21-2; doc. 30 at 2. It also wants to depose Zorn about his activities while on disability. It says that

> [a]mong other things, documents obtained during this litigation reveal that despite his claimed disability and the receipt of benefits, plaintiff continued to renew his insurance licenses, submitted some applications for insurance, met with insurance company representatives and negotiated business deals, entered into agency appointments, bought and sold land as part of a land development business, worked on zoning and utility matters for that development business, including attending county commission meetings for that purpose and interacting with utility company representatives, and continued to engage in management activities (by computer and in person) in connection with his insurance agency.

Doc. 28 at 7. Three months after PLIC served its subpoena, the corporate entities (*not* Zorn's accountant) move to quash the subpoena (filed an "Objection"), doc. 21, while Zorn himself moves for a protective order against PLIC's deposition notice. Doc. 26.

## II. ANALYSIS

A significant cost-saving factor is embedded in the ERISA statutory scheme.[2] Congress wants ERISA-based claims resolved administratively, with limited judicial review that, as will be more fully discussed below, should be restricted to the administrative record. Thus, "[d]iscovery is normally disfavored in the ERISA context, and depositions are perhaps particularly uncommon." *Davis v. Retirement Plan of Phibro Animal Health Corp.*, 2010 WL 2696106 at * 2 (S.D. Ill. July 6, 2010) (quotes and cite omitted). Otherwise, courts apply the generic discovery standards.

In that regard, Rule 26(b) of the Federal Rules of Civil Procedure allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). For good cause, discovery may be expanded to information "relevant to the subject matter involved in the action." *Id*. Relevant

---

[2] ERISA's purpose is to: (1) promote efficiency, predictability and uniformity so as to keep down costs and encourage employers to offer ERISA plans, *Conkright v. Frommert*, 130 S. Ct. 1640, 1649 (2010); and (2) ensure at least as much beneficiaries' protection under ERISA as they had prior to ERISA's enactment. *Moon v. Amer. Home Assur. Co.*, 888 F.2d 86, 89 (11th Cir. 1989); *see also Baxter v. Sun Life Assur. Co.*, ___ F.Supp.2d ___, 2010 WL 2011633 at * 6 (N.D. Ill. May 20, 2010) (permitting deposition in an ERISA action on limited topics, including a structural conflict of interest and the denial of benefits, but otherwise limiting discovery to ensure that "the competing concerns at issue -- inexpensive and expeditious resolution of ERISA claims and the discovery of relevant information -- are both accommodated.").

4

information need not be admissible at trial. In fact, it need only "appear [ to be] reasonably calculated to lead to the discovery of admissible evidence." *Id.* The party seeking discovery must establish this threshold burden. *Canada v. Hotel Development-Texas, Ltd.*, 2008 WL 3171940 at * 1 (N.D. Tex. July 30, 2008).[3]

Protective orders can be issued to limit discovery if it is

> (i) . . . unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(i). A party from whom discovery is sought may move for a protective order if it shows good cause "to protect [that] party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

---

[3] This showing progresses in layers. When the discovery sought appears relevant on its face, the party *resisting* it must show the lack of relevance by demonstrating that it: (1) does not come within the broad scope of relevance as defined under discovery rule; or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. When the relevancy of a discovery request is *not* apparent on the face of the request, then the party seeking the discovery has the burden to show its relevancy. *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003).

Under Rule 45, a Court can quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). There is no explicit "relevancy" ground in Rule 45(c)(3)(A), but it is implicit. *Transcor*, 212 F.R.D. at 591 (Rule 45 relevancy standards are the same as Rule 26). Being forced to produce irrelevant information, much less data not reasonably calculated to lead to admissible evidence, can obviously constitute an undue burden. Once the "subpoenor" establishes that its subpoena is within the scope of permissible discovery, the burden shifts to the "subpoenee" to show why it should be quashed. *Hotel Development-Texas*, 2008 WL 3171940 at * 1.

A motion to quash must be timely, however. Rule 45(3)(A) ("Upon *timely* motion....") (emphasis).[4] And generally, only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to it, though another party may challenge it if he has a personal right or privilege with respect to the subject matter requested in the subpoena. *Transcor,* 212 F.R.D. at 590 (bank customer had standing to challenge subpoena to bank for customer's records), *cited in*

---

[4] PLIC correctly argues that the quash motion (doc. 21) can be denied on those grounds alone (as the companies supply no valid reason for why they took three months to move to quash), doc. 30 at 4 n. 2, but the Court chooses to apply the substantive reasons set forth *infra*.

*Anastasion v. Credit Service of Logan*, 2010 WL 3081434 at * 3 (D.Utah Aug. 6, 2010); *see generally* WRIGHT & MILLER, 9A FED. PRAC. & PROC. CIV. § 2459 n. 7 (3d ed. 2010) (collecting "personal right or privilege" cases).[5]

"ERISA discovery" relevancy typically turns on how the claimant's disability claim (or termination of the plan's pay-out on that claim) is administratively determined. And since the bulk of ERISA claims are supposed to be resolved administratively and not judicially, plan administrators must "provide a 'full and fair review' of claim denials." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (quoting 29 U.S.C. § 1133(2)). Discovery thus often derives from challenges to whether such review in fact was full and fair. *See, e.g.*, *Sivalingam v. Unam Provident Corp.*, 2010 WL 2650428 at * 2 (E.D. Pa. July 1, 2010).

Even though in most cases judicial review is limited to the record generated during the plan's determination of that claim, *see e.g.*, *Eldridge v. Wachovia Corp. Long-Term Disability Plan*, 2007 WL 117712

---

[5] The Court concludes that the subpoenaed companies have standing to file their motion to quash, as the subpoena reaches business matters in which they colorably claim a valid interest.

at * 2 (11th Cir. Jan. 18, 2007) (no abuse of discretion in district court's denial of discovery "because the record was restricted to the evidence that was before the administrators"), exceptions exist, and they depend on things like how much discretion the plan administrator had in determining a given claim, or if the plan provider funds *and* administers the plan and thus creates a conflict of interest. *See Sivalingham,* 2010 WL 2650428 at * 5 (denied general discovery to an ERISA claimant seeking data from his disability insurer because the underlying plan vested discretionary authority in plan's administrator; judicial review is confined to the administrative record); *Baxter v. Sun Life Assur. Co. of Canada,* ___ F. Supp. 2d ___, 2010 WL 201163 at * 6 (N.D. Ill. May 20, 2010) (limiting discovery to issue of insurer-plan administrator's structural conflict of interest and its effect, if any, on denial of benefits to insured through offset of medical malpractice settlement); *Blankenship v. Metro. Life Ins. Co.,* 686 F. Supp. 2d 1227, 1233-34 (N.D. Ala. 2009) (collecting cases in other contexts).

As noted above, here the administrator seeks discovery from the claimant, and what it seeks extends to events that occurred *after* the administrative record was generated. Beyond that the parties agree that

the plan vests its administrator (PLIC) with *no* discretionary authority, so judicial review is *de novo* and therefore *not* limited to the administrative record. Doc. 26 at 2; doc. 28 at 1; doc. 29 at 1.

Zorn insists, however, that during the administrative review in this case he fully cooperated "and provided extensive testimony on questioning by PLIC." Doc. 28 at 3; *see also* doc. 29 at 4 ("Plaintiff submitted to numerous interviews including a lengthy video examination which lasted from 10:26 a.m. until 3:15 p.m. and resulted in a 241 page transcript with 32 exhibits.").[6] Thus, PLIC is unduly burdening if not harassing him. *Id.*

---

[6] Zorn points out, too, that

> his son and wife also submitted to questioning during similar video statements. Upon [PLIC's] request, Plaintiff also provided extensive records, in addition to medical information, which included tax returns, business records, and affidavits. Additionally, post litigation, Defendant also received documents in response to its numerous "Freedom of Information Act" and subpoena requests. Some of this information was *not even information that existed at the time of the administrator's decision*. Thus, the Defendant's attempt to once again require Plaintiff to submit to additional questioning to rehash issues which were extensively explored during the lengthy administrative process does not serve the purposes of ERISA and is nothing more tha[n] an attempt to annoy, embarrass, and put an undue burden and expense on Plaintiff.

Doc. 29 at 4 (emphasis added). Thus, Zorn agrees that PLIC has uncovered post-record information from extra-record sources. Significantly, he does *not* contend that such information is irrelevant to his claim.

PLIC claims (and Zorn agrees, *see supra* n. 6) that since the administrative resolution of Zorn's claim it has learned more information, including documents "from the investigatory files of the Georgia Department of Insurance, the Georgia Attorney General's office, the local district attorney's office, and the Army Corp of Engineers, as well as records from other insurance companies, banking records, and medical records." Doc. 28 at 7. Thus, PLIC contends, it should be allowed to question Zorn about those documents as well, in that they show he continued to engage in plenty of disability-inconsistent activities. *Id.* at 7. While PLIC had some of this information "prior to the litigation -- and indeed[, it] was part of the basis for the denial of his claim -- the evidence has been *significantly amplified* during this litigation. PLIC Life should be able to question plaintiff concerning these matters prior to any trial of the case." *Id.* at 7-8 (emphasis added).

PLIC's points are well taken. "In this circuit, a district court conducting a *de novo* review of an Administrator's benefits determination is *not* limited to the facts available to the Administrator at the time of the determination." *Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994) (emphasis added). But *Kirwan*, as well as later opinions like *Shaw*

*v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1284 n.6 (11th Cir. 2003) (*de novo* review authorizes consideration of post-record evidence), did not define any limits on how far such parties can venture discovery-wise, and good policy reasons exist to limit post-record discovery to where it is "good-cause-necessary" to conduct an adequate *de novo* review of the administrator's determination. *Wheatley v. Am. United Life Ins. Co.*, 792 N.E.2d 927, 930-31 (Ind. Ct. App. 2003) (applying federal law); *see also Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993) (only when "circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review" of the benefit determination); *see generally* 22 A.L.R. FED. 2D 459 § 11 (2007) (collecting cases, most of which deny post-record information).

Neither the parties nor the Court have located an Eleventh Circuit case addressing the discovery of post-record evidence, the nature of that information, how far parties can go to discover it, and how it may be presented in a *de novo* judicial review.[7] But again, a core ERISA policy is cost-containment by constraining parties to try and resolve their

---

[7] This was touched upon, but not reached, in *Doe v. Provident Life & Acc. Ins. Co.*, 247 F.R.D. 218, 222 n. 4 (D.D.C. 2008).

coverage disputes administratively. That rightly should drive the analysis here, even in a *de novo* review case.

Hence, a district court conducting *de novo* review of an administrator's decision should make a particularized determination of whether and why specific evidence outside the administrative record should be admitted. *Hall v. UNUM Life Ins. Co.*, 300 F.3d 1197, 1202 (10th Cir. 2002). And, it should be "the unusual case in which the district court should allow supplementation of the record," with the burden placed on the moving party to show that such evidence is necessary to the district court's de novo review. *Id.* at 1203; *see also Wolfe v. Advance Ins. Co.*, 2009 WL 2106138 at * 1 (D. Kan. July 16, 2009).

At the same time, where "evidence outside of the administrative record is sought at the discovery stage, the petitioner 'need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement.' *Rubino v. Aetna Life Ins. Co.*, 07 Civ. 377, 2009 WL 910747, at *4 (E.D.N.Y. Mar. 31, 2009) (quoting *Trussel v. CIGNA Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008)) (internal quotation marks omitted). . . ."

*Burgio v. Prudential Life Ins. Co. of America*, 2009 WL 3128008 at \* 6 (E.D.N.Y. Sept. 29, 2009); *see also Kagan v. Unum Provident*, 2009 WL 3486938 at \* 2 (S.D.N.Y. Oct. 29, 2009).

Has PLIC shown "a reasonable chance that the requested discovery will satisfy the good cause requirement" here? Both parties agree on this much: (a) PLIC contends that the administrative record as it exists supports its claim that Zorn is, in essence, defrauding it by demanding disability benefits when he knows he's not disabled; but (b) PLIC claims that it has uncovered post-record evidence tending to support its claim that Zorn is *still* exaggerating his disability and thus attempting to defraud his disability plan. Zorn does not claim this assertion is wild or baseless or malicious; he simply does not want to sit for a deposition and answer questions about it *again*.

Yet, to a substantial extent there is no *again*, since PLIC wants to ask him about his *post*-record activities, and evidence that he is not disabled *now* would obviously be relevant to showing that he was not disabled *then* (i.e., when his claim was denied administratively). Thus, the risk of harassing a claimant to extract at best cumulative and at worst repetitious evidence is low; PLIC is not simply seeking repetitive

13

evidence on a discrete period of *prior* disability, but instead *continuing* disability. Inquiry into any present malingering will naturally be probative of past malingering.[8] PLIC thus prevails here.

But there is one more layer of discovery analysis that must be undertaken, and it relates to PLIC's mention of taking this case to trial. There is no jury trial right in a plain-vanilla ERISA case. 60A AM. JUR. 2D PENSIONS § 808 (*Right to jury trial*) (2010); 7 BUS. & COM. LITIG. FED. CTS. § 79:20 (2d ed. 2009).[9] No grounds exist to support a jury-trial right here. That obviously affects discovery strategy (e.g., depositions versus affidavits) and trial-presentation considerations (judges as factfinders may accept a broader presentation). It is thus worth pausing to provide guidance on *how* discoverable information may be presented to, and digested by, this Court, so that the parties will be better positioned to

---

[8] At the risk of belaboring the obvious, PLIC could not possibly have gotten the post-record evidence into the administrative record -- because it did not exist until after that record was generated. Zorn's alleged fraud is *ongoing* and thus is obviously corroborative of PLIC's claim that Zorn defrauded it for years before it cut his benefits off. Evidence that one is committing the same wrongful act (fraudulent insurance-benefits claim) now is self-demonstrably relevant to whether one has done so in the past.

[9] Courts have found such a right in hybrid ERISA cases (where a legal claim is mixed in), *Stewart v. KHD Deutz Corp.*, 75 F.3d 1522, 1526-27 (11th Cir. 1996), which is not the case here.

formulate rational (and less disputable) discovery requests. This will include how Zorn may be questioned about his post-record activities.

Consistent with ERISA's cost-saving purpose, courts use "trial-on-paper" and thus Fed. R. Civ. P. 52/56 variants.[10] The information discovered and thus presented to this Court, then, will flow through a variant of the Fed. R. Civ. P. 56, summary-judgment mechanism to review the administrative record. That is, the parties shall present their information nominally through Rule 56 motions, but the Court will not use factual inferences in either side's favor. *Gent v. CUNA Mut. Ins. Society*, ___ F.3d ___, 2010 WL 2723083 at * 2 (1st Cir. July 12, 2010); *see also Herman v. Metro. Life Ins. Co.*, 689 F. Supp. 2d 1316, 1319 n. 1 (M.D. Fla. 2010) (collecting cases).

Other courts import the inference-favoring factor in Rule 56 and thus inquire whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying (or terminating) a benefit claim. *Hert v. Prudential Ins. Co.*, 650 F. Supp.

---

[10] *See, e.g., Miller v. The Hartford Life and Acc. Ins. Co.*, 2010 WL 1050006 at * 6 (N.D. Ga. Mar. 17, 2010) ("Thus, the Court has considered this case in the context of a trial on the papers, which constitutes the trial of this case, but without the need for the parties or counsel to appear, because the Court's review of the papers is limited to the administrative record, aided by the parties' briefs.").

2d 1180, 1190 (S.D. Fla. 2009). But those cases rely on the premise that the Court is confined to the administrative record -- a point solidly affirmed where *deferential* review is accorded to an administrator's determination. *See, e.g., Richards v. Hartford Life & Accident Ins. Co.*, 153 F. App'x 694, 697 n. 1 (11th Cir. 2005).

Here, in contrast, the Court will engage in a *de novo*, no-deference review of the no-disability determination. Yet, no one here has cited any authority on how a *de novo* reviewing court should handle *post-record* evidence, let alone how to make credibility determinations on it. The Court sees no reason why Fed. R. Civ. P. 52 would not apply; so said the Eleventh Circuit in a somewhat related context. *Mack v. Metro. Life Ins. Co.*, 246 F. App'x 594, 595-96 (11th Cir. 2007); *Herman*, 689 F. Supp. 2d at 1319 n.1. For that matter, district court credibility findings resting on *documentary evidence* are accorded deferential appellate review. *Anderson v. Bessemer City*, 470 U.S. 564, 574-75 (1985) ("[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous," and that "[t]his is so even when the [trial] court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from

other facts."); *United States v. Marcavage*, 609 F.3d 264, 285-86 (3rd Cir. 2010).

The Court thus clarifies that, given its ERISA-defined role and ERISA's overarching purpose, Rule 52 applies but the presumption is to "try the case on paper." Hence the parties' evidence will be presented through the modified Rule 56 mechanism noted above, with no factual inferences tilted in either party's favor. *Bates v. Metro. Life Ins. Co.*, 2009 WL 2355834 at *1 (M.D. Ga. Jul 27, 2009) ("the role of the district court in ERISA matters is not to determine whether issues of fact exist for trial but to review the administrative record before it under the ERISA framework *and make adjudications on both fact* and law as would occur in a bench trial while handling the manner in an expedited fashion resembling summary judgment.") (quotes and cite omitted; emphasis added); *cf. M.T.V. v. DeKalb County School Dist.*, 446 F.3d 1153, 1156-67 (11th Cir. 2006) (nothing bars the district court from fact-finding under Rule 52 in Individuals with Disabilities Education Improvement Act cases, which also involve administrative-record-based, judicial review).

The parties therefore should tailor their discovery and their evidential presentations in light of that Rule 52/56 dynamic. And since

there shall be no jury hearing the evidence, the Court likely will err on the side of admitting a fairly wide range of post-record evidence to support PLIC's fraud evidence on whether Zorn in fact is not disabled, is lying about or otherwise faking his disability, and thus would be perpetrating a fraud upon this Court by claiming otherwise now.[11] To avoid undue expense, however, counsel should consider a "Stipulation Conference" after subpoenaed documents are exchanged, and only *then* (should some facts not be stipulated) consider expense-sparing follow-up methods (e.g., affidavits instead of depositions).

Subject to those conditions, the pending "motion to quash"[12] (doc. 21) and protective-order motion (doc. 26) are **DENIED**. *Cf. Glennon v.*

---

[11] The Court rejects as baseless Zorn's argument that more restrictive discovery standards should be applied to insurers than to beneficiaries. Doc. 29 at 2-3. *Moon*, which he cites for that proposition, did not go down that road but merely decided whether a reviewing court is confined to the administrative record upon *de novo* review of a benefits determination (it held that it is not). *Moon*, 888 F.2d at 89-90. *Moon* cited to the standard ERISA rationales (to do otherwise would impose less protection to beneficiaries than they enjoyed pre-ERISA), but did *not* go on, as Zorn implies, to devise one discovery standard for administrators and one (more liberal at that) for beneficiaries. *Id.*

[12] The Zorn companies filed an "Objection" that the Clerk docketed as a "Motion to Quash." Doc. 21. Setting aside the Objection's untimeliness (filed 3 months after the subpoena issued) and issue of standing, the "Zorn entities" present no real argument, but instead illuminate irrelevant points like the fact that a predecessor entity "was dissolved in 1988" (if true, then the subpoenee simply responds "no documents available"; there is no need to seek a court ruling to communicate the same result). Doc. 21 at 1 ¶ 3. Another "Objection" is that Zorn has not and does not "derive any compensation" from the entities. This is also irrelevant, as one may accrue equity

*Prudential Ins. Co.*, 2009 WL 4405755 at * 1 (N.D. Ga. Dec. 2, 2009) (granting post-record discovery to claimant in a disability-benefits termination case).

**SO ORDERED** this  18th  day of August, 2010.

/s/␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA

---

instead of take compensation, or operate an entity as a tax pass-through vehicle, etc. In fact, the gist of what PLIC seeks is evidence that Zorn *functioned* at a non-disabled level when he interacted with these entities, not whether he "merely sat on the Board of Directors" of one of them, *id.* at 2 § 4. Payments or equity credits to him may lead to information on what he did to warrant same (hence, were any financial or in-kind transfers to him a mere incident of ownership or did Zorn provide a disability-inconsistent service to them?).